THE ATTORNEY GENERAL
OF TEXAS


Gerald C. Mann
WILL WILSON XXXXXXX
ATTORNEY GENERAL

Honorable M. O. Flowers
Secretary of State
Austin, Texas

Dear Sir:                                    Attention:  Mr. Will Mann Richardson

Opinion No. O-2544
Re:  Admissibility of contract as
     property for payment of capital
     stock.

        This will acknowledge receipt of your letter of July 13, 1940, in
which you seek an opinion of this department upon the question of whether
or not you should approve an amendment to the charter of Texas Guarantors,
Incorporated, whereby the capital stock of such company is being increased
from $25,000.00 to 10,000 shares of no par value class "A" stock and 2,500
shares of class "B" stock of the par value of $10.00 per share.  It appears
that all the class "A" stock has been subscribed and that 5,000 shares
thereof have been paid for at the rate of $10.00 per share.  All class "B"
stock has been previously subscribed and paid for.

        The amendment reflects that the $50,000.00 paid for the 5,000
shares of class "A" stock is being paid for out of surplus.  It further ap-
pears that the assets of such company consist of $2,954.39 cash and an as-
signment of the proceeds of an operating contract upon which a value of
$250,000.00 has been placed.  The surplus, therefore, is represented by
such assignment of the proceeds under the contract involved.

        The specific question submitted for our consideration is whether
or not the contract involved is of such character as to be admissible for
the purpose for which it is proposed to be used.

        As to the nature and character of the contract here involved, we
quote from the affidavit of the Board of Directors of Texas Guarantors,
Incorporated, as follows:

        "The contract referred to in said financial statement is a
contract whereby Texas Guarantors, Incorporated, has guaranteed to Texas
Independence Life Insurance Company the performance by F. D. Glass, Jr. of
his contractual obligations to said Texas Independence Life Insurance Com-
pany as its President and bonded officer.  That in consideration for such
guarantee, said F. D. Glass, Jr. assigned and transferred to Texas Guaran-
tors, Incorporated, all net profits, all net proceeds accruing to him as
President of said Texas Independence Life Insurance Company.  That under

the law he, as such President, would be entitled to receive 40% of the gross premium income, and such income, less operating expenses, is what is assigned and transferred to Texas Guarantors, Incorporated. That for the last 8 months of 1939 this 40% amounted to $42,580.28, and for the first 6 months of 1940 it amounted to $37,661.60 or a total of $80,241.88 for the last 14 months and from this amount there would be deductable only the operating expenses. Because this has been a period of expansion and acquisition of other companies, the operating expenses have been somewhat above what they would normally be, and it is estimated that these operating expenses hereafter will amount to approximately $2,300.00 per month. Since this assignment was made in February, 1939, Texas Independence Life Insurance Company has expanded its business to a great extent by the purchase and merger of numerous other mutual life insurance companies, so that now its gross monthly premium income is approximately $23,000.00.

"That the three affiants are familiar with the manner of dealing with the purchase and sale of mutual life insurance companies in Texas and know the prices paid for such companies, where the company is in a sound condition as the Texas Independence Life Insurance Company is, and the fair and reasonable market value for such a company is from ten to twelve times its gross monthly premium income, and sales frequently are made on that basis. That the above mentioned contract results in all net profits from the operat on of Texas Independence Life Insurance Company passing to Texas Guarantors, Incorporated, for its own use and benefit, and therefore said contract itself has a value comparable with what would be the value of the Texas Independence Life Insurance Company, and said contract not being cancellable, but running for the life of the Texas Independence Life Insurance Company, has a value of at least the amount of $25,000.00. (That, as a matter of fact, one of the companies purchased and merged into the Texas Independence Life Insurance Company and having a gross monthly premium income of approximately $7,300.00 was purchased at a price of $80,000.00)"

We quote from a letter from Mr. James P. Markham, Jr., the attorney for Texas Guarantors, Incorporated:

"Texas Independence Life Insurance Company is operating as a state-wide mutual life insurance company and is subject to Article 4859-f. On February 10, 1939 Texas Guarantors, Incorporated entered into an agreement with Texas Independence Life Insurance Company by which agreement the former company guaranteed to the latter company that the President of the latter company would faithfully and truly perform all his obligations to Texas Independence Life Insurance Company. This agreement was in the following language:

"'State of Texas;
    County of Harris:  Know All Men By These Presents:

"That the undersigned Texas Guarantors, Incorporated, acting herein by and through its duly authorized officers, and for a good and valuable

consideration this day received by it from F. D. Glass, Jr., and from Texas Independence Life Insurance Company, receipt of which considerations is hereby acknowledged and confessed, does hereby guarantee to said Texas Independence Life Insurance Company that F. D. Glass, Jr., will faithfully and truly perform all his obligations to the said Texas Independence Life Insurance Company arising out of his contract with said company in his position as its President, and said Texas Guarantors, Incorporated, shall be fully accountable to said Texas Independence Life Insurance Company for any omission or breach by said F. D. Glass, Jr. of any of his said obligations to said Texas Independence Life Insurance Company.

"'One of the considerations for this guarantee is a transfer by the said F. D. Glass, Jr. unto said Texas Guarantors, Incorporated of all his right, title and interest in and to any and all net profits, net revenues, or net proceeds accruing or resulting to said F. D. Glass, Jr., by reason of his office as President of Texas Independence Life Insurance Company and any rights or emoluments accruing to him as such officer.

"'It is expressly understood that this contract of guarantee, as well as the transfer of the above mentioned net profits, net revenues and net proceeds, and any other emoluments, shall endure for the entire life of Texas Independence Life Insurance Company, and shall inure to the benefit of and be enforceable against the heirs or successors in interest of said F. D. Glass, Jr. and Texas Guarantors, Incorporated, respectively, during the entire life of the Texas Independence Life Insurance Company.

"' WITNESS the corporate seal and signature of Texas Guarantors, Incorporated, at Houston, Texas, on this the 10th day of February, 1939.'"

The contract between F. D. Glass, Jr. and the Texas Independence Life Insurance Company was made and entered into by virtue of the acceptance by the said Glass of the presidency of such company and under the applicable portion of Article 26 of the company's by-laws. Such Article reads:

"ARTICLE XXVI:   DUTIES OF OFFICERS
Section 1.
PRESIDENT: - The President shall preside at all meetings of the Company, the Board of Directors, and the Executive Committee. He shall sign all membership certicicates or policies, contracts, and other written undertakings entered into by the Company. He shall see that all laws and regulations of the Company are faithfully and impartially executed. The President shall own all office furniture, fixtures, supplies, and the general agency contract of the Company, and in event of his death or removal from office for cause, his interest shall revert to his estate. He shall receive and disburse all funds accumulating to the Expense Fund and it shall be his duty to record accurately in the books of the Association all receipts and disbursements of every character of the Expense Fund the same as the Mortuary Fund. After all expenses have been paid, any excess in the Expense Fund shall belong to the President and can be used by him as personal funds. The President shall be elected by the Board of Directors for an unlimited time and shall continue in office until he is removed for

cause. He can be removed from office only for wilful neglect of duty, misappropriation of funds or malfeasance of office. In case of his removal from office, he shall be compensated for the good will and the assets built up by him; the amount of said compensation to be determined by the Board of Directors and/or Executive Committee."

Reference has been made to our Opinion No. O-1625 previously written to you in which we dealt with a somewhat similar situation. In such opinion we considered the effect of Article 5064 of the Revised Civil Statutes upon the situation there presented. We think that such opinion would unquestionable control the present situation unless it can be said that Article 4859f, Section 19, of the Revised Civil Statutes relieves the present company form the terms and provisions of Article 5064.

The Texas Independence Life Insurance Company is operating as a mutual insurance company under the provisions of Chapter 8a, Title 78, of the Revised Civil Statutes. Article 4859f, Section 19 thereof, reads in part:

". . . Except as herein expressly provided, no insurance law of this state shall apply to any corporation operating under this act, and no law hereafter enacted shall apply to them unless they be expressly designated therein."

Your request does not call on us to pass upon the question of whether or not Article 5064, supra, is violated in the instant case and for that reason we do not undertake to decide such question.

We are here concerned with the sole question of whether or not the property involved is property within the purview of the pertinent constitutional provisions so as to be admissible for the payment of capital stock.

Section 6 of Article 12 of the Texas Constitution reads:

"No corporation shall issue stock or bonds except for money paid, labor done or property actually received, and all fictitious increase of stock or indebtedness shall be void."

We think the correct test for the determination of whether or not property is of such character as to be capable of being accepted by a corporation in payment of capital stock was set forth by Judge Phillips of the Supreme Court in the case of Washer vs. Smyer, 211 S. W. 985, 4 A.L.R. 1320. The question involved in such case was whether or not a note was property within the purview of the above quoted constitutional provision. The court said:

"Undeniably, in the broad sense a note is property in the hands of the payee. So, in a literal sense, is everything property which is capable of ownership. All forms of choses in action are property in the same sense

--the right to recover a debt, the right to recover damages for breach of a contract, unsatisfied judgments, and other similar kinds of actionable demands. But the framers of the Constitution never intended that property of that nature should constitute the capital of a corporation. The term 'property' was used in this section of the Constitution in no such sense. It means property readily capable of being applied to the debts of the corporation. As a rule, it should be property of the kind adapted to the charter uses of the corporation and which it may legally acquire. There are some classes of property which are so staple in character and so easily convertible into money as to be in actual commerce the ready equivalent of money, and it is possible that a corporation in its formative period would be authorized to receive such property in payment for stock though not, in a strict sense, adapted to its purposes. The different forms of valuable property and the different purposes for which corporations may be created, make it impossible to lay down other than general rules upon the subject.

"The integrity of a corporation and the interests of the public demand, however, that the assets of a corporation consist of something more than its stockholders' debts. Its capital cannot be thus constituted, and therefore it cannot accept a stock subscriber's note in payment for his stock. There is authority opposed to this holding, as there is authority which supports it. But it seems to us no authority is needed to establish it."

Viewing the contract involved in the light of the foregoing well established principles of law, we do not believe it constitutes property within the purview of the Constitution and consequently the charter amendment does not warrant your approval.

There are other serious questions involved in connection with the contract between Texas Independence Life Insurance Company and F. D. Glass, Jr., one of which is the right of the Board of Directors of such company to bind the corporation by contract for the personal services of Glass for a period of time longer than the term for which such directors are elected. Such, however, are questions not necessary for us to decide.

The proposed amendment and supplemental affidavits are returned herewith.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By s/Lloyd Armstrong
Lloyd Armstrong
Assistant

LA:jm/wc
Encl.
APPROVED Opinion Committee By s/R.W.F. Chairman
Approved Aug. 12, 1940   S/Grover Sellers   First Assistant Attorney
General